# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | Case No. 2:05-cr-00241(2) |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **KEVIN L. DANIELS,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before this Court on Defendant Kevin Daniels's Motion for a Writ of Coram Nobis. (ECF No. 88). For the reasons set forth below, this Court **GRANTS** Mr. Daniels's Motion for a Writ of Coram Nobis to vacate Count 2 of his *Daniels I* Amended 2007 Judgment and hereby **ISSUES** such a writ (ECF No. 88). This Court therefore **AMENDS** both the Judgment and Commitment Order (ECF No. 71) and this Court's prior Order issuing the Amended 2007 Judgment (ECF No. 83) to vacate Count 2 for use of a firearm during and in relation to an offense of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2).

### I. BACKGROUND

This Court recently detailed the relevant background for Mr. Daniels's Motion (*see* ECF No. 87), but for the sake of completeness, this Court includes it again here. On February 23, 2007, Mr. Daniels was sentenced in this case ("*Daniels I*") to a total of seventy-two (72) months of incarceration after pleading guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count 1), and aiding and abetting the use or carrying of a firearm during and in relation to a crime of violence, in violation to 18 U.S.C. §§ 924(c)(1) and 2 (Count 2). (ECF Nos. 70, 71). But, relevant here, Mr. Daniels's original judgment (his "2007 Judgment") did not match

1

his plea. Instead, his 2007 Judgment listed Count 1 as *aiding and abetting* Hobbs Act robbery (ECF No. 71)—which, both then and now, is a crime of violence (ECF No. 82 at 6); *see United States v. Richardson*, 948 F.3d 733, 742 (6th Cir. 2020).

To the contrary, the same is not true for *conspiracy* to commit Hobbs Act robbery. Formerly, under now-rejected Sixth Circuit precedent, "conspiracies to commit violent crimes were proper predicate offenses under [§ 924(c)'s] residual clause." *See United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019). But after the Supreme Court's invalidation of this "residual clause" in *United States v Davis*, 139 S. Ct. 2319 (2019), conspiracy charges no longer qualify as "predicate offenses." *United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021) (citing *Manners v. United States*, 947 F.3d 377, 379 (6th Cir. 2020)). Indeed, for at least three years now, this Court has rejected "conviction[s] under 18 U.S.C. § 924(c), predicated on the crime of conspiracy to commit a Hobbs robbery." *Wingler v. United States*, No. 20-cv-3168, 2021 WL 2336786, at *1 (S.D. Ohio Jun. 8, 2021).

Then, in May of 2023, Mr. Daniels was convicted by a jury of Hobbs Act robbery and of using or carrying a firearm during or relating to that robbery, as well as of felony possession of a firearm. (*United States v. Daniels*, 2:21-cr-00239-MHW-1 ("*Daniels II*"), ECF No. 64).[1] Prior to sentencing and final judgment in *Daniels II*, Mr. Daniels attempted to seek relief based on the aforementioned change in treatment of § 924(c) predicate offenses on multiple occasions, all of which that court rightfully deemed premature. (*See, e.g.*, *Daniels II*, ECF Nos. 73, 75, 79, 84, 86).

Accordingly, in June 2023, Mr. Daniels filed a motion to amend/correct the *Daniels I* 2007 Judgment. (ECF No. 75). In this motion, he requested that Count 1 of the 2007 Judgment be amended to reflect that he pled guilty to conspiracy to commit Hobbs Act robbery, not aiding and

---

[1] Unless otherwise noted, ECF citations are to *Daniels I*.

2

abetting. (*Id.*). Additionally, Mr. Daniels submitted that the correction of Count 1 in the 2007 Judgment would render invalid his conviction on Count 2, as conspiracy to commit a Hobbs Act robbery is no longer a crime of violence. (*Id.*). He sought the Count 1 relief under Federal Rule of Criminal Procedure 36, to rectify a clerical error, but sought Count 1 relief pursuant to 28 U.S.C. § 2255. (*Id.*).

Acknowledging that Count 1 was, indeed, transcribed incorrectly on his 2007 Judgment, this Court granted Mr. Daniels's request to correct Count 1 of the Judgment to reflect his conviction for conspiracy (ECF No. 82) and subsequently amended the 2007 Judgment as to Count 1 (ECF No. 83 ("Amended 2007 Judgment")). This Court also acknowledged that "[i]f Count 1 of the 2007 Judgment is amended to reflect a conviction for conspiracy, then Count 2 of the 2007 Judgment (providing Defendant his first § 924(c)(1) conviction) is invalid." (ECF No. 82 at 6). But this Court was nonetheless required to deny his request for § 2255 relief on Count 2, as Mr. Daniels had completed his sentence in this case and therefore was not "in custody" in the way required to vest this Court with habeas jurisdiction. (ECF No. 82). As such, this Court did not consider the merits of his Count 2 argument.

A few months later, this Court received a letter from Mr. Daniels "request[ing] a certificate of appealability of [his] 2255 motion[.]" (ECF No. 84). This Court interpreted the request as a *pro se* motion for a certificate of appealability, but sought to clarify whether Mr. Daniels intended to file a motion to amend and/or a Rule 60 motion for reconsideration. (ECF No. 85). Mr. Daniels responded that he "would like to proceed with [his] certificate of Appealability pro se motion concerning … denial of count 2 aiding an [sic] ebetting [sic] a firearm in furtherance of a crime of violence." (ECF No. 86).

3

Since this February letter, Mr. Daniels has been sentenced in *Daniels II*. (*Daniels II*, Minute Entry, Mar. 14, 2024). At sentencing, Judge Watson acknowledged Mr. Daniels's unfortunate procedural posture: that Mr. Daniels faced a sentencing enhancement in *Daniels II* based on the combination of his now-erroneous § 924(c) conviction in *Daniels I* and his still-proper § 924(c) conviction in *Daniels II*, as a second § 924(c) conviction results in a 25-year mandatory minimum. (*Daniels II*, ECF No. 102 at 4 (discussing 18 U.S.C. § 924(c)(1)(C)). But Judge Watson explained that his hands were functionally tied in *Daniels II* given that Mr. Daniels still had, for *Daniels II* sentencing purposes, a valid § 924(c) conviction in *Daniels I*.

As such, this Court directed Mr. Daniels to file a "writ of coram nobis" instead of a certificate of appealability or habeas petition. (ECF No. 87). In so doing, this Court explained that a reasonable jurist could not disagree with this Court's conclusion to deny his prior habeas petition, as he is no longer "in custody" pursuant to *Daniels I*. (*Id.* at 4). But, this Court made clear that Mr. Daniels's conspiracy to commit Hobbs Act robbery charge from *Daniels I* no longer constitutes a crime of violence, such that he should not have been charged with or convicted of the initial § 924(c)(1) count. (*Id.* at 5). Mr. Daniels filed his writ of coram nobis (ECF No. 88) which, as the Government has responded (ECF No. 89), is now ripe for this Court's substantive review.

## II. STANDARD OF REVIEW

As the Supreme Court has instructed, "[i]n behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief." *United States v. Morgan*, 346 U.S. 502, 505 (1954). Where "the record … adequately present[s] a motion in the nature of a writ of error *coram nobis*," the trial court is "enabl[ed] … to properly exercise its jurisdiction." *Id.* (citing *Adams v. McCann*, 317 U.S. 269, 272 (1942)). A writ of coram nobis "is of the same general character as one under 28 U.S.C. § 2255," but is used to vacate a federal conviction after the

4

petitioner has already served his corresponding sentence, such that relief under 28 U.S.C. § 2255 would be unavailable. *Id.* at 506, 506 n.4. As this Court explained before, Mr. Daniels's posture is precisely that for which such a writ is appropriate: "when the petitioner has served his sentence completely and thus is no longer 'in custody'" according to the proceeding the writ attempts to challenge. *United States v. Johnson*, 237 F.3d 751, 774 (6th Cir. 2001) (citing *Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996)). "Otherwise a wrong may stand uncorrected which the available remedy would right." *Morgan*, 346 U.S. at 512. And "[j]ust as a continuing civil wrong is not beyond redress because its genesis is old, so the ongoing effects of a criminal conviction justify the allocation of the judicial resources necessary to take a fresh look." *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) (citing *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 3006–07, 92 L.Ed.2d 315 (1986)).

At common law, a successful writ of coram nobis required a petitioner to demonstrate: "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Johnson*, 237 F.3d at 774 (citing *Blanton*, 94 F.3d at 230). The view then was that "[i]f a judgment … be erroneous in matter of fact only, and not in point of law, it may be reversed in the same court," as opposed to a higher court on review. *Morgan*, 346 U.S. at 507 n.9. But the Supreme Court expanded coram nobis relief beyond its common law roots in 2009, making clear that "coram nobis is … an extraordinary tool to correct a legal *or* factual error[.]" *See United States v. Denedo*, 556 U.S. 904, 911–13 (2009) (emphasis added); *United States v. Castano*, 906 F.3d 458, 462 n.1 (6th Cir. 2018) (citing *Denedo*, 556 U.S. at 917). And as "a legal error will presumably always appear in the record," a petitioner no longer needs to prove that the challenged error "be unknown to the trial court at the time of trial." *Castano*, 906 F.3d at 462 n.1. As such, only the third common

5

law requirement continues to govern today. *Id.* at 462 (citing *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012)).

It cannot be gainsaid that "the precise contours of coram nobis have not been 'well defined[.]'" *Denedo*, 556 U.S. at 910 (citing *Bronson v. Schulten*, 104 U.S. 410, 416 (1882)). A petitioner need not *only* show an error "of a fundamentally unjust character" to be eligible for coram nobis relief. Instead, given the extraordinary nature of the remedy at issue here, "there are several limitations on its use," including that coram nobis must be a petitioner's only potential remedy, and that the writ must "remedy an ongoing civil disability." *Castano*, 906 F.3d at 463 (citing *Denedo*, 556 U.S. at 911 as to the former and *United States v. Waters*, 770 F.3d 1146, 1147 (6th Cir. 2014) as to the latter). Generally speaking, coram nobis relief is inappropriate where a petitioner could have raised his claims on direct appeal. *Id.* at 464 (discussing *Morgan*, 346 U.S. at 512, and the common law history of the writ). But all of these contours "remain[] subject to the ultimate question of coram nobis[:] … whether granting the writ is necessary to achieve justice." *Id.*

### III. LAW & ANALYSIS

With this guidance in mind, this Court turns to the merits of Mr. Daniels's Motion. Mr. Daniels requests coram nobis relief because: (1) he has no alternative avenues for relief because this Court rightfully denied his habeas petitions and he is unable to seek relief from Judge Watson in *Daniels II* until his *Daniels I* record is corrected; and (2) the repercussions of his *Daniels I* conviction persist outside of the *Daniels I* context. (*See generally* ECF No. 88).

But the Government disputes Mr. Daniels's request for coram nobis relief on two main grounds. Substantively, the Government argues "[t]here is simply no 'error of the most fundamental character' here" because "[Mr. Daniels] could properly be charged with a substantive

6

Hobbs Act violation" which, as a crime of violence, would be grounds for his § 924(c) violation. (ECF No. 89 at 4). And procedurally, in the Government's view, Mr. Daniels "has not acted timely" because he "could have raised the present argument in his original case" or, at the latest, five years ago, when the Supreme Court decided that Hobbs Act conspiracy is not a § 924(c) predicate offense. (*Id.* at 5).

As to other avenues to relief, it is clear to this Court, as well as to Judge Watson, that Mr. Daniels, "who is in custody but wishes to challenge a prior conviction, has no alternative remedy to coram nobis." *Id.* (explaining why habeas relief is not available to petitioners like Mr. Daniels). Nor could Mr. Daniels have had this issue addressed on direct appeal. As articulated below, this Court could not have expected Mr. Daniels to known about the impact of the *Daniels I* error on his *Daniels II* case until he came to face the issue in *Daniels II*. *Infra*, pp. 10–11. And it would have been inappropriate to do so in *Daniels II*, as Judge Watson explained:

> THE COURT: So as we sit here today, you still have a prior conviction for conspiracy to commit Hobbs Act robbery. I can't just wave my hand and do away with that. That's why I'm suggesting you go back to Judge Marbley. Okay? … [Y]ou have an appeal that you're going to file [after this sentencing in *Daniels II*]. Certainly one of the issues you're going to raise is I shouldn't have applied a 25-year mandatory minimum because my underlying case should have been retroactively dealt with.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Except that's not my case. That's Judge Marbley's case. That's why I say I can't magically do something about it. He's got to do something about it.

(*Daniels II*, ECF No. 102 at 2–3).

The next question, then, is whether Mr. Daniels has shown that he is "subject to ongoing civil disability." *Waters*, 770 F.3d at 1147. This Court finds that he has. "[T]he writ is valuable to bring an end to what may be substantial civil disabilities attached to criminal convictions." *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988). As is the case here, "[a]lthough the term has

7

been served, the results of the conviction may persist[,] [s]ubsequent convictions may carry heavier penalties, civil rights may be affected." *Morgan*, 346 U.S. at 512–13. The Sixth Circuit adopted the Seventh Circuit's three-part test for "[a] qualifying civil disability," requiring that: (1) "the disability must be causing a present harm" as opposed to "purely speculative harms or harms that occurred completely in the past"; (2) "the disability must arise out of the erroneous conviction"; and (3) "the potential harm to the petitioner must be more than incidental." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990). Based on this test, "[o]ne injury rising to the level of a civil disability is an enhanced penalty for a recidivist offender." *Castano*, 906 F.3d at 463 (citing *Craig*, 907 F.2d at 658; *United States v. Daniels*, 532 U.S. 374, 380 (2001)).

Mr. Daniels unambiguously faces just that. As Judge Watson made clear to Mr. Daniels at his *Daniels II* sentencing, "[a]s you sit here today, you're still eligible for a 25-year statutory mandatory minimum under 18 United States Code Section 924(c)(1)(C)." (*Daniels II*, ECF No. 102 at 4). The impact of the erroneous *Daniels I* § 924(c)(1) presents an ongoing harm to Mr. Daniels, as it poses a "realistic threat" that his conviction will subject him to a mandatory minimum above what he would otherwise be legally allowed to be sentenced to. Unlike in *Castano*, where "the sentencing judge ha[d] vast discretion to consider Castano's past relevant conduct *even if* one of his [prior] convictions is vacated," the mandatory minimum is not, technically, discretionary. 906 F.3d at 463; (*see* ECF No. 91 at 2, 6 (discussing prosecutorial discretion)).

While Judge Watson did not ultimately apply the 25-year mandatory minimum, he acknowledged the non-speculative risk of this occurring in the near future because his decision is "going to the Court of Appeals. If they think that I should have applied the 25 years, they'll tell me and we'll come back here and we'll do that." (*Daniels II*, ECF No. 102 at 33). As to whether this exercise of "discretion" will be challenged on appeal, the Government made its position

8

explicit: "There is currently [a prior 924(c) conviction] … [t]hat triggers the 25-year mandatory minimum." (*Id.* at 29). Because of this, "it's the government's position that [the mandatory minimum] is not discretionary[;] … it shall be 25 years." (*Id.*). Fixing Mr. Daniels's currently erroneous posture in *Daniels I* eliminates this present risk, as there should not be—and there would no longer be—a prior § 924(c) upon which to base the mandatory minimum.

In this Court's view, the only reason Mr. Daniels is not already subjected to the 25-year mandatory minimum is, quite frankly, luck of the draw. To be sure, this is not to say that Judge Watson's decision to base his sentencing on the lower of the two mandatory minimums faced by Mr. Daniels is wrong or incorrect, or that no other judge would have done the same. Indeed, this Court agrees with the approach given the circumstances. But the reality is that, without intervention, unless the next person to consider the matter anew opts to impose what the Government argues "is an illegal sentence," Mr. Daniels will face the 25-year mandatory minimum. Such a realistic risk is not speculative.

Not only is this present harm more than speculative, but it is also more than incidental. The difference between a 25-year versus 7-year mandatory minimum cannot reasonably be considered "occurring merely by chance" or "likely to ensure as a … minor consequence." *Incidental*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incidental (last visited Aug. 14, 2024); (*See Daniels II*, ECF No. 102 at 20 (explaining the 7-year mandatory minimum)). Facing a threat of 18 additional years in prison due a mistake on this Court's judgment in 2007 is anything but a "minor consequence." While "an individual's conviction at trial and subsequent incarceration" can, as a general matter, "represent[] a valid deprivation of liberty in compliance with due process and other constitutional guarantees," such is not the case where the documented outcome of a proceeding was flawed in a way that further deprives one of their liberty. *Joseph v.*

9

*Curtin*, 410 F. App'x 865 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 791–92 (6th Cir. 2008)).  And such a threat is distinct from those deemed insufficient for coram nobis relief, such as a potential reputational injury, *Waters*, 770 F.3d at 1147–48; a temporary disbarment and the possibility of recovering a fine, *Keane*, 852 F.2d at 204; and the "desire to obtain a desirable job," *United States v. Bush*, 888 F.2d 1145 (7th Cir. 1989). Unlike those, Mr. Daniels's situation does not present the type of injury or error that "our legal system must tolerate … in order to function." *Craig*, 907 F.2d at 658.

It cannot be understated that Mr. Daniels's civil disability exists solely because of a "clerical error" that this Court acknowledged and has fixed. (*See* ECF Nos. 82, 83). In so doing, this Court also acknowledged Mr. Daniels's argument that "[i]f Count 1 of the 2007 Judgment is amended to reflect a conviction for conspiracy, then Count 2 of the 2007 Judgment (providing Defendant his first § 924(c)(1) conviction) is invalid," but explained that it was unable to consider it via habeas petition. (*Id.* at 6–7). Even after this aspect of the error was fixed, Mr. Daniels has continued to contest his *Daniels I* § 924(c) at every turn. *See Blanton v. United States*, 94 F.3d 227, 233 (6th Cir. 1996). But this Court was without the ability to adjudicate this issue until it came by way of the appropriate procedural vehicle—a vehicle which is now in front of this Court. Granting Mr. Daniels's request for a writ of coram nobis is, to this Court, exactly what is "necessary to achieve justice." *Castano*, 906 F.3d at 464.

Given this "fundamentally unjust error," coram nobis relief is warranted. *United States v. Reid*, No. 1:97-cr-94, 2011 WL 3417235, at *5 (S.D. Ohio Aug. 4, 2011). This is so in light of the Government's argument that Mr. Daniels has not presented "sound reasons for failure to seek appropriate relief earlier," (ECF No. 89 at 5 (citing *Castano*, 906 F.3d at 464)), as this Court finds no inexcusable delay.

10

Instead, Mr. Daniels began his many attempts to correct his record in June 2023. (*See* ECF Nos. 75, 84, 86, 88). In this Court's view, his awareness was reasonably triggered by the events in *Daniels II*, for which he was tried and convicted in March 2023. (*See Daniels II*, ECF Nos. 60, 61, 64). Specifically, his *Daniels II* presentence investigation report, which erroneously listed a prior conviction of aiding and abetting Hobbs Act robbery, was docketed on May 5, 2023. (*Daniels II*, ECF No. 68 at 13). Mr. Daniels then sought to correct his *Daniels I* judgment on June 28, 2023. (ECF No. 75). This gap of less than two months can hardly be said to constitute a delay.[2]

The Government's authority suggesting this Court hold otherwise is inapposite to Mr. Daniels's case. To start, the case on which it relies as to its post-conviction timeliness argument, *Simmons v. United States*, relies on a case that ultimately granted coram nobis relief based on the factual circumstances underlying the petitioner's delay in seeking his writ. 181 F.3d 103 (Table), at *1 (citing *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992) (reversing and remanding for consideration of timeliness, after which the district court "h[e]ld that the passage of time does not bar Nicks' petition," *Nicks v. United States*, 835 F. Supp. 151, 152 (S.D.N.Y. 1993))). The same is true here as, as determined above, Mr. Daniels promptly sought relief as soon as it had reason to impact him. What is more, had Mr. Daniels sought coram nobis relief any earlier than after his *Daniels II* sentencing, the Government would likely have argued that *Castano* nonetheless bars his petition. There, the defendant raised concern about the potential of a heightened sentence based on what he argued is an erroneous prior § 924(c). *Castano*, 906 F.3d at 463. But the Sixth Circuit rejected his argument as "speculative" since his sentencing had not yet occurred. *Id.*

---

[2] This finding undermines the Government's assertion that Mr. Daniels's Motion is "barred by laches," for which it cites *Craven v. United States* for the proposition that "a seven-year delay was unreasonable" based on that court's reliance on cases finding five-, nine-, and fifteen-year delays to be unreasonable. 26 F. App'x 417, 419 (6th Cir. 2001) (citing cases). But Mr. Daniels's "delay" after awareness is incongruent both *Craven* and the cases it relies on.

11

Following that to its logical end results in no window of time for Mr. Daniels to have requested the relief he is owed. This Court refuses to endorse such an unjust interpretation.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Mr. Daniels's Motion for a Writ of Coram Nobis to vacate Count 2 of his *Daniels I* Amended 2007 Judgment and issues such a writ (ECF No. 88). This Court hereby **AMENDS** both the Judgment and Commitment Order (ECF No. 71) and this Court's prior order issuing the Amended 2007 Judgment (ECF No. 83) to vacate Count 2 for use of a firearm during and in relation to an offense of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (2). As it relates to *Daniels II*, Judge Watson was correct that "[t]he writ that [he] suggest[ed] [Mr. Daniels] file" will indeed "bring [them] back … after sentencing at some point[.]" (*Daniels II*, ECF No. 102 at 4).

**IT IS SO ORDERED**.

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: August 26, 2024**